IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LUKE ALEXANDER PRINDABLE, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 3:21-CV-685-MAB |
| ) | |
| DAVID MARCOWITZ, ) | |
| LESLIE RIVERA, ) | |
| MICHAEL SEVERINO, ) | |
| MELODY MURRY, ) | |
| RICHARD WATSON, ) | |
| SHANA CHAMBERS, and ) | |
| THOMAS SAGGIO, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motions for summary judgment brought by all Defendants (Docs. 85, 87). For the reasons explained below, the motions are granted.

### BACKGROUND

Plaintiff Luke Prindable filed this civil rights action on June 22, 2021, claiming that while he was detained at the St. Clair County Jail in Belleville, Illinois, he was denied emergency medical treatment for his "twisted" testicles. Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on an Eighth or Fourteenth Amendment claim for inadequate medical treatment against Dr. David Marcowitz, Officer Leslie Rivera, Officer Michael Severino, Officer Shana

Chambers, Nurse Melody Murry, and Nurse Thomas Saggio (Doc. 7).[1]

Defendants filed their motions for summary judgment on July 26, 2023 (Docs. 85, 87; *see also* Doc. 88). They provided the requisite notice to Plaintiff advising him of the consequences of failing to respond to the motions for summary judgment and the necessity of supporting his response with affidavits or other documentary evidence (Docs. 86, 89). *See Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982).

Despite the notice, Plaintiff failed to file a response within the 30-day window for doing so. *See* SDIL-LR 7.1(b). The Court then gave Plaintiff until October 10, 2023, to show cause as to why his failure to respond to the motion for summary judgment should not be construed as an admission of the merits of the motion (Doc. 92). In the alternative to responding to the Order to Show Cause, Plaintiff was told he could simply file a response to the motion for summary judgment (Doc. 92). He was explicitly warned that his failure to do one or the other could result in the Court granting Defendants' motions for summary judgment (Doc. 92). To date, Plaintiff has not filed a response to either motion for summary judgment.

## FACTS

Plaintiff's failure to respond to Defendants' motions for summary judgment is deemed an admission that Defendants' version of the facts is true. SDIL-LR 56.1(g) ("All

---

[1] It was unclear at the time the threshold order was issued whether Plaintiff was a pretrial detainee or a convicted prisoner when his claim arose (Doc. 7, p. 5). Therefore, it was unclear whether the Fourteenth or Eighth Amendment governed his claim (*Id.*).

material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed."). The Court thus accepts as undisputed all facts set forth in Defendants' statements of fact. *E.g., Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014); *Terrell v. Am. Drug Stores*, 65 F. App'x 76, 77 (7th Cir. 2003). Those facts are as follows.

Plaintiff was a detainee at the St. Clair County Jail from October 10, 2020, to February 9, 2022 (*see* Doc. 85-2; Doc. 85-3). He was booked into the Jail on probation violation charges as well as new charges for violation of an order of protection (Doc. 85-2).

Defendant Richard Watson was the St. Clair County Sheriff; he was added as a Defendant in his official capacity only for the purpose of carrying out any injunctive relief that was potentially ordered (Doc. 7). Defendants Leslie Rivera, Michael Severino, and Shana Chambers, were correctional officers at the Jail (Doc. 85). Defendant Dr. David Marcowitz was a physician at the Jail and Defendants Melody Murry and Thomas Saggio were nurses at the Jail (Doc. 88-2; Doc. 88-3; Doc. 88-4).

Plaintiff contends that after eating dinner in the late afternoon or evening of May 23, 2021, he took a nap for a couple of hours and awoke with numbness and pain in his testicles (Doc. 85-1, pp. 128–129; *see also id.* at pp. 32–33). Plaintiff spoke to Officer Leslie Rivera and told her that his testicles were hurting really bad, and she said she would notify other personnel (*Id.* at pp. 129–30).

Later that evening, Nurse Melody Murry came by Plaintiff's cell; she was accompanied by Officer Michael Severino (Doc. 85-1, pp. 32–33; 131–32). Plaintiff could

not recall how much time had gone by between when he first spoke to Officer Rivera and Nurse Murry showed up at his cell; he estimated that it was somewhere between one and three hours (*Id.* at pp. 130–31). Plaintiff testified that he told Nurse Murry about the pain he was experiencing in his testicles (*Id.* at pp. 32–33, 131–32). While Officer Severino was present, he did not speak to Plaintiff about his situation; only Plaintiff and Nurse Murry spoke (*Id.* at pp. 133–34). Nurse Murry told Plaintiff to fill out a sick call request; she handed him the form, waited for him to fill it out, and then took it from him and submitted it to the medical unit to triage (Doc. 88-3, ¶ 7).

At the Jail, detainees received medical care by first submitting a Health Services Request form ("HSR" or "sick call request"), describing their medical complaint (Doc. 88-3, ¶5; Doc. 88-4, ¶4). The form is submitted to the medical unit and the detainee is scheduled for a nurse sick call appointment (Doc. 88-3, ¶5; Doc. 88-4, ¶4). If a detainee requires medical care from a higher-level provider, then the detainee is scheduled for M.D. sick call to see the physician at the Jail (Doc. 88-3, ¶5; Doc. 88-4, ¶4).

The sick call request that Plaintiff filled out said, "My testicles hurt really Bad[.] I think I twisted them up[.] I told Nurse Melody it was an emergency when she was passing out nightime [sic] medication. I told her they're going numb." (Doc. 88-6, p. 1).

The next day on May 24, 2021, Nurse Thomas Saggio spoke to Plaintiff at the gate of Plaintiff's isolation cell (Doc. 88-4, ¶¶ 6, 7, 8). Nurse Saggio said there was a set of bars between them, and he did not see Plaintiff's testicles but instead asked Plaintiff questions through the bars (*Id.*). Saggio said he saw Plaintiff in this manner because he "ha[d] concerns related to the nature of [Plaintiff's] complaint" and it was quicker than waiting

to see Plaintiff in an exam room (*Id.*). Nurse Saggio wrote that Plaintiff stated his testicles "were not swollen or tender" and "there was no discoloration but . . . they were numb" (*Id.* at ¶ 7; *see also* Doc. 88-7, p. 1). However, Plaintiff also told Nurse Saggio "that [he] could feel them when [he] touched them" (Doc. 88-4, ¶ 7). Nurse Saggio stated that after talking with Plaintiff, he deemed it appropriate to put Plaintiff on the doctor list for an examination with the physician (*Id.* at ¶ 8; *see also* Doc. 88-7, p. 1).

Plaintiff saw Dr. David Marcowitz two days later on May 26, 2021. During that time, Plaintiff made a number of additional complaints about his testicles. On May 25th, Plaintiff wrote a grievance asking to be taken to the hospital to get his testicles "untangled" (Doc. 88-7, p. 2). Plaintiff recalled that he also communicated with Nurse Murry on May 25th (Doc. 85-1, pp. 143–44; *see also* Doc. 88-7, p. 2). Plaintiff wrote another grievance on May 26th complaining that officers and nurses refused to provide him with emergency medical treatment (Doc. 88-7, p. 3). He also told a mental health counselor on May 26th that his testicles were "twisted" and he needed to go to the hospital (Doc. 88-6, p. 5). The counselor noted that Plaintiff had no other questions or concerns and did not appear to be in distress (*Id.*).

When Plaintiff saw Dr. Marcowitz later that day, he reported numbness in his testicles for three days (Doc. 88-2, ¶5; *see also* Doc. 88-6, p. 4). Dr. Marcowitz performed an examination for a testicular torsion and noted there was no swelling or visible atrophy in Plaintiff's testicles (Doc. 88-2, ¶5; *see also* Doc. 88-6, p. 4). Based on his examination and assessment, Dr. Marcowitz determined that it was not medically indicated or necessary for Plaintiff to be sent to a hospital off-site for medical care (Doc. 88-2, ¶ 6; *see also* Doc.

85-1, pp. 147–48; Doc. 88-7, p. 3). Dr. Marcowitz told Plaintiff to return if his symptoms worsened (Doc. 88-2, ¶5; Doc. 88-6, p. 4).

Following the appointment, Plaintiff submitted a sick call form stating that he disagreed with Dr. Marcowitz's decision not to send him to the hospital (Doc. 88-6, pp. 2–3). He also continued to submit health request forms and was seen by medical personnel for a variety of complaints on several occasions and was not denied further care (Doc. 85-1, pp. 150–51). In particular, Plaintiff submitted a sick call request on June 4, 2021, asking to have "[his] testicles looked at again" because "they still don't work" (Doc. 88-6, p. 6). He was referred to see the physician (*see id.*). Plaintiff was seen and assessed by Dr. Marcowitz five days later on June 9, 2021 (Doc. 88-2, ¶7; Doc. 88-6, p. 7). Plaintiff told Dr. Marcowitz that his testicles were "twisted" (Doc. 88-2, ¶7; Doc. 88-6, p. 7). Dr. Marcowitz performed an external genitalia examination and again noted no swelling or tenderness (Doc. 88-2, ¶7; Doc. 88-6, p. 7). Plaintiff was instructed to continue to monitor the situation and return if his symptoms worsened (Doc. 88-2, ¶7; Doc. 88-6, p. 7).

Plaintiff filed his lawsuit on June 22, 2021 (*see* Doc. 1). The following month, Plaintiff continued to complain about issues with his testicles (*see* Doc. 88-6, pp. 9, 11, 12, 16, 17). He wrote that he was unable to get an erection or ejaculate, and he speculated it was because his testicles were twisted (*Id.* at pp. 12, 16). Dr. Marcowitz examined Plaintiff on July 28th but, once again, did not observe any symptoms that matched Plaintiff's complaints (Doc. 88-2, ¶8; *see* Doc. 88-6, p. 17). Plaintiff refused offers of Tylenol and ibuprofen, and when asked what medical care he was seeking for his complaints, he

responded, "nothing. I just want it documented" (Doc. 88-2, ¶8; *see* Doc. 88-6, p. 17).

There is no evidence that Plaintiff sought further medical care regarding his testicles following the July 28th appointment (*see generally* Doc. 88-6). He was scheduled to see Dr. Marcowitz on August 4th but refused the appointment (Doc. 88-4, ¶11; Doc. 88-6, p. 18). Nurse Saggio documented Plaintiff's refusal, writing that despite having "placed 88 sick calls," Plaintiff refused to see Dr. Marcowitz and said "he was fine" (Doc. 88-6, p. 18). The notes from Plaintiff's annual physical in November 2021 make no mention of any complaints about his testicles (Doc. 88-6, p. 19). In early February 2022, Plaintiff was transferred to Menard Correctional Center (*see* Doc. 88-8, p. 1). The medical intake screening and notes from medical appointments in the months that followed make no mention of any ongoing testicle issues (*Id.* at pp. 1–5). Plaintiff testified that after his arrival at Menard, he was seen for "a bunch" of medical concerns but did not receive any treatment for his testicles (Doc. 85-1, pp. 121–22).

Plaintiff testified that he did not seek further medical care regarding his testicles because the pain eventually subsided (Doc. 85-1, p. 112). He further testified that his testicles never swelled, became discolored, or changed in size (*Id.* at pp. 88, 90, 112), and admitted that "there was nothing . . . external or visible that seemed abnormal" (*Id.* at pp. 131–32).

Plaintiff's only testimony regarding Sergeant Shana Chambers was that he believed she prevented other officers from giving him certain forms needed to complete the second step of the grievance process (Doc. 85-1, pp. 145–47).

<u>ANALYSIS</u>

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, the court's task is to view the record and draw all reasonable inferences in the light most favorable to the non-moving party and decide if there is a genuine material dispute of fact that requires a trial. *Stewart*, 14 F.4th at 760; *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

Where, as here, "a nonmovant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment was proper given the undisputed facts,' with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

A threshold question is which constitutional provision governs Plaintiff's claims. A post-conviction-prisoner's claim for inadequate medical care is governed by the Eighth Amendment deliberate indifference standard while the same claim raised by a pretrial detainee is governed by the Fourteenth Amendment objective unreasonableness. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 350 (7th Cir. 2018); *Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017). This distinction matters because, under the Fourteenth Amendment,

"a pretrial detainee must prove only that the defendant's challenged conduct was *objectively* unreasonable; he need not also demonstrate, as the Eighth Amendment requires, that the defendant was *subjectively* aware that his conduct was unreasonable." *McGee v. Parsano*, 55 F.4th 563, 569 (7th Cir. 2022) (citing *Miranda*, 900 F.3d at 352) (emphasis in original).

Here, the medical Defendants apply, without discussion, the Fourteenth Amendment standard (Doc. 88, pp. 9–10). The officer Defendants, however, argue that the Seventh Circuit has not expressly decided yet whether the Eighth Amendment or the Fourteenth Amendment should apply to a claim by an individual held on a probation violation (Doc. 85, pp. 2, 10). *See Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 614 n.2 (7th Cir. 2022) (noting that it was "not entirely clear" whether the plaintiff, who was detained at county jail on an unadjudicated probation violation, "fits within the Eighth Amendment or the Fourteenth Amendment framework."); *Estate of Clark v. Walker*, 865 F.3d 544, 546 n.1 (7th Cir. 2017) (noting that "[c]ourts have expressed some uncertainty regarding which amendment controls for hybrid forms of detention" but declining to decide the issue). *See also Whiting v. Marathon Cnty. Sheriff's Dep't*, 382 F.3d 700, 703 (7th Cir. 2004) (stating in dicta that an individual detained at jail on a probation hold was "arguably a pre-trial detainee" but declining to definitively decide) (internal parentheses omitted).

There have been times, however, that the Seventh Circuit has previously treated individuals held on a parole or probation violation as pretrial detainees without directly addressing the issue. *Smith v. Sangamon Cnty. Sheriff's Dep't* 715 F.3d 188, 191 (7th Cir. 2013) (plaintiff detained in jail following arrest on charges of impersonating a police

officer and for parole violation); *King v. Price*, 221 F.3d 1338, 2000 WL 831802, at *1, 2 (7th Cir. 2000) (unpublished) (plaintiff detained in jail following arrest on various new charges and violation of probation). *See also* Edmiston v. Borrego, 75 F.4th 551, 558 (5th Cir. 2023) (using Fourteenth Amendment standard to evaluate claims of an individual held at county jail after being arrested for a parole violation); *Russell v. Lumitap*, 31 F.4th 729, 738 (9th Cir. 2022) (using Fourteenth Amendment standard to evaluate claims of an individual held at county jail after being arrested for a probation violation); *Smith v. Franklin Cnty.*, 762 F. App'x 885, 887, 889 (11th Cir. 2019) (holding individual being held at county jail following his arrest for probation violation and driving under the influence was a pretrial detainee whose claims were governed by the Fourteenth Amendment). Numerous district courts have likewise followed suit. *E.g., Est. of Nottestad by Clark v. La Crosse Cnty.*, No. 21-CV-535-JDP, 2022 WL 17583798, at *5 (W.D. Wis. Dec. 12, 2022) (collecting cases); *Ratliff v. Ramus*, No. 20-CV-1823, 2022 WL 17976874, at *3 (E.D. Wis. Dec. 28, 2022); *Leach v. Shaffer*, No. 16-CV-634-JPG-RJD, 2019 WL 5874220, at *8 (S.D. Ill. July 15, 2019).

In this instance, the outcome will be the same regardless of which constitutional provision applies, so the Court will follow the approach from previous cases and analyze Plaintiff's claims under the objective-unreasonableness standard of the Fourteenth Amendment. After all, if Plaintiff's claims cannot survive summary judgment under the objective unreasonableness standard of the Fourteenth amendment, then they would also necessarily fail under the Eighth Amendment's more stringent deliberate indifference standard. *See McGee*, 55 F.4th at 569.

In order for Plaintiff to survive summary judgment, he must show that he was suffering from an objectively serious medical condition, that Defendants—acting "purposefully, knowingly, or perhaps even recklessly," as opposed to negligently—responded or failed to respond in a manner that was objectively unreasonable. *Williams v. Ortiz*, 937 F.3d 936, 942–43 (7th Cir. 2019). The objective-reasonableness standard requires the Court to "focus on the totality of facts and circumstances" in the case and "gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *McGee*, 55 F.4th at 569 (quoting *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018)).

Defendants do not dispute that Plaintiff's testicular pain and numbness was an objectively serious medical condition (*see* Doc. 85, 88). However, based on Defendants' undisputed statement of facts, no reasonable jury could conclude that Defendants' responses to Plaintiff's condition were objectively unreasonable.

### A. DEFENDANT OFFICERS

Plaintiff made clear at his deposition that his claim in this suit stemmed from an asserted delay in treatment and from not being referred to a hospital (*see* Doc. 85-1, p. 115, 144, 148). But he conceded that no delay in treatment or treatment decision could be attributed to any correctional officer (*Id.* at p. 144). He explained that he named Officer Rivera, Officer Severino and Sergeant Chambers in his Complaint not because of any action they had taken but because they were witnesses to the actions of the nurses and doctors he named in the suit (*Id.* at pp. 127–28, 135). He admitted he had minimal interactions with the officers and he could not recall any of them making any kind of joke

or insulting comment about his condition (*Id.* at p. 135, 142–43, 151–52). Plaintiff also could not specifically point to anything the officers did that made his condition worse or contributed to the delay in him being seen by the doctor (*Id.* at pp. 144–45). In fact, Plaintiff went so far as to say the officers were "pretty much irrelevant" to his claims and they were named as Defendants "just in case" (*Id.* at p. 135). Given Plaintiff's testimony, there is no basis for finding Officer Rivera, Officer Severino and Sergeant Chambers liable for violating Plaintiff's constitutional rights. *See Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.").

Even if Plaintiff had not made the above concessions and the Court were to consider each of the officers' actions, the Court concludes they would still be entitled to summary judgment. Beginning with Sergeant Chambers, Plaintiff did not provide any testimony whatsoever about how Chambers was purportedly involved in providing him with inadequate medical care (*see* Doc. 85-1). Chambers is thus entitled to summary judgment. As for Officer Rivera, Plaintiff testified that when he told Rivera on the evening of May 23rd that his testicles hurt, Rivera said he would notify other personnel (Doc. 85-1, pp. 32–33, 130–31). Plaintiff did not offer any explanation as to why Rivera's response was objectively unreasonable and the Court has no reason to believe that it was. Rivera is thus entitled to summary judgment. With respect to Officer Severino, he said nothing and let Nurse Murry handle the situation because she was the medical professional on scene. Plaintiff did not offer any explanation as to why Severino's response was objectively unreasonable and the Court has no reason to believe that it was. It is well-

Page 12 of 17

established that it is objectively reasonable for non-medical staff at the facility to trust the medical professionals to provide appropriate care. *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 888 (7th Cir. 2018); *Miranda v. Cty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018). Severino is thus entitled to summary judgment.

### A. MEDICAL DEFENDANTS

Plaintiff's claim against Nurse Murry, Nurse Saggio, and Dr. Marcowitz is premised on his belief that they provided him with inadequate medical care because they did not treat his situation as a medical emergency and send him to the hospital. Plaintiff testified that the only way he would have been satisfied by the medical care provided is if he had been sent off-site to a hospital (Doc. 85-1, p. 115). But a detainee is not entitled to demand specific care. *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) (citation omitted). The question for the Court is whether there is any evidence from which a reasonable jury could conclude that the care provided by Defendants was objectively unreasonable, and the Court concludes there is not.

The evidence is that Plaintiff told Nurse Murry all of the specifics of what was going on, and she responded by telling him to fill out a sick call request, which is the procedure generally to receive medical care. (She also waited for him to fill out the form and submitted it to the medical unit.). Implicit in Nurse Murry's response is that she determined Plaintiff's situation was not a medical emergency. Nurse Saggio reached the same conclusion the next day after he spoke to Plaintiff about the condition of his testicles and learned there was no swelling, tenderness, or discoloration, and Plaintiff could feel the sensation of touching his testicles. Dr. Marcowitz also concluded that Plaintiff's

situation was not a medical emergency after conducting his own medical examination.

Plaintiff disagrees with Defendants' assessments and insists that he needed immediate medical attention. However, there is a complete dearth of evidence to support Plaintiff's position. He only has his own speculation that he should have been sent to the hospital, which is not enough to establish Defendants' responses were objectively unreasonable. *Vogelsberg v. Kim*, No. 20-2926, 2022 WL 1154767, at *3 (7th Cir. Apr. 19, 2022) ("[D]isagreement with a doctor's chosen course of treatment does not make the treatment objectively unreasonable.") (citing *Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019)). *Cf. Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor . . . about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation."); *Johnson v. Doughty*, 433 F.3d 1001, 1012–13 (7th Cir. 2006) ("Mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient [to show deliberate indifference]."). Consequently, Defendants Murry, Saggio, and Marcowitz are entitled to summary judgment.

Given that summary judgment has been granted to all Defendants who are the subject of Plaintiff's claim—Rivera, Severino, Chambers, Murry, Saggio, and Marcowitz—Plaintiff is not entitled to any relief, including injunctive relief. Therefore, Defendant Richard Watson, who was named in his official capacity for purpose of injunctive relief only, is likewise entitled to summary judgment.

## CONCLUSION

The motion for summary judgment filed by Defendants Leslie Rivera, Michael

Severino, Shana Chamber, and Richard Watson (Doc. 85) and the motion for summary judgment filed by Defendants Melody Murry, Thomas Saggio, and David Marcowitz (Doc. 87) are **GRANTED.** This case is **DISMISSED** with prejudice. The Clerk of Court is **DIRECTED** to enter judgment in Defendants' favor and close this case on the Court's docket.

    **IT IS SO ORDERED.**

    **DATED: December 7, 2023**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## NOTICE

Plaintiff is advised that this is a final decision ending his case in this Court. If Plaintiff wishes to contest this decision, he has two options: he can ask the undersigned to reconsider the Order or he can appeal to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal in the district court *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).

On the other hand, if Plaintiff wants to start with the undersigned, he can file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), but such a motion is not required to preserve his appellate rights. Any Rule 59(e) motion *must* be filed within twenty-eight (28) days of the entry of judgment. FED. R. CIV. P. 59(e), and the deadline *cannot* be extended. *See* FED. R. CIV. P. 6(b)(2). Any motion must also comply

with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010) ("This court has held that otherwise timely skeletal motions that fail to satisfy the requirements of FED. R. CIV. P. 7(b)(1) do not postpone the 30-day period for filing a notice of appeal . . . .").

So long as the Rule 59(e) motion is in proper form and filed no later than 28 days after the judgment is entered, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the motion is ruled on. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal, and the clock will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.